David S. Stone
Robert A. Magnanini
Jason S. Kanterman
STONE & MAGNANINI LLP
100 Connell Dr., Suite 2200
Berkeley Heights, NJ 07922
Tel: (973) 218-1111
Fax: (973) 218-1106

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT KOHN, SUSAN KOHN, and MARK ISACOFF, *on behalf of themselves and all others similarly situated,*<br><br>Plaintiffs,<br><br>v.<br><br>EQUIFAX, INC., and EQUIFAX INFORMATION SERVICES, LLC,<br><br>Defendants. | Civil Action No. _____<br><br><br>**CLASS ACTION COMPLAINT AND**<br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Robert Kohn, Susan Kohn, and Dr. Mark Isacoff (hereinafter "Plaintiffs"), on behalf of themselves and all others similarly situated, based on personal knowledge as to themselves, and upon information and belief as to all other matters, allege as follows:

## I.    NATURE OF CLAIMS

1.    On September 7, 2017, Equifax publicly disclosed one of the largest data breach incidents in United States history, implicating the release of confidential and secure information belonging to 143 million United States consumers.[1]

2.    Many of the 143 million consumers whose personally identifiable information ("PII") was accessed as a result Equifax's failure to protect it never gave their consent to Equifax to receive it. Instead, Equifax compiled this information from third-parties and stored it without the affected individuals' knowledge.

3.    For others,  however, like Plaintiffs, Equifax's gross-mishandling of highly confidential personal information is particularly outrageous. Plaintiffs took precautions to prevent precisely this type of injury. They paid substantial sums of money to Equifax to protect their identity from theft, and were promised a "Surprise-Free Future[.]"[2] They paid for products offering a "greater sense of comfort" from the risks of "identity theft."[3] In exchange for that "greater sense of comfort," Plaintiffs handed-over their most highly confidential information to Equifax so that it could be tracked, and any identity theft or adverse credit event reported.

4.    The highly confidential personal information that was accessed includes Social Security numbers, credit card numbers, home addresses, and drivers license numbers. In the wrong hands, this information allows criminals unfettered access to the homes, bank accounts, credit card accounts, financial accounts, tax returns, and government documents of those affected.

---

[1] Equifax Data Breach Website, https://www.equifaxsecurity2017.com (last visited Sept. 15, 2017).

[2] Equifax, Identity Theft Protection, https://www.equifax.com/personal/identity-theft-protection (last visited Sept. 16, 2017).

[3] Equifax, Identity Theft Protection Products, https://www.equifax.com/personal/products/identity-theft-protection (last visited Sept. 16, 2017).

5.      Knowing Equifax permitted their most highly confidential information to be accessed by unknown third-parties for an extended period of time, affected individuals must now work with financial and credit institutions to ensure criminals do not open unauthorized accounts in their names, steal money from their checking and savings accounts, or authorize purchases they never agreed to.

6.      Knowing Equifax permitted their most highly confidential information to be accessed by unknown third-parties, affected individuals must now work with lenders to ensure criminals do not obtain mortgages, student loans, or other advances without their permission.

7.      Knowing Equifax permitted their most highly confidential information to be accessed by unknown third-parties, affected individuals must now work with government agencies to ensure criminals do not use their identity to commit crimes in their names, obtain government-issued identification in their names, or otherwise fall victim to unwarranted criminal prosecution or government inquiry.

8.      Knowing Equifax permitted their most highly confidential information to be accessed by unknown third-parties, affected individuals must now work to ensure criminals do not use their home addresses to target their homes and families for theft, robbery, or worse.

9.      Knowing Equifax permitted their most highly confidential information to be accessed by unknown third-parties, affected individuals must now constantly review their credit reports, bank statements, and tax documents to confirm that Equifax's gross-mishandling of their confidential information does not result in further injury.

10.      Knowing Equifax permitted their most highly confidential information to be accessed by unknown third-parties, affected individuals will have to be, for the remainder of their

lives, vigilant of criminals using the information Equifax leaked to destroy their reputations and financial stability.

11.     This class action is brought to remedy the overwhelming amount of damage that has already occurred from this incident, and mitigate the damage that will continue to plague Plaintiffs for the remainder of their lives. Plaintiffs bring this class action on behalf of themselves and all others similarly situated for actual and statutory damages of not less than $30 billion, plus any punitive damages, declaratory relief, injunctive relief, equitable relief, or other remedy permitted by applicable law to fully redress the outrageous actions of Equifax and compensate Plaintiffs for the substantial and irreparable harms caused by Equifax's wrongful acts.

## II.     JURISDICTION AND VENUE

12.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from one Defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

13.     This Court has personal jurisdiction over Defendants because they conduct business in New Jersey, have a sufficient level of minimum contacts with New Jersey, purposefully availed themselves of this forum by directing services at New Jersey consumers, and a substantial part of the events and injury giving rise to Plaintiffs' claims occurred within this District.

14.     Venue is proper in this District under 28 U.S.C. § 1391(b), (c), and (d), because a substantial part of the events or omissions giving rise to the claims occurred and/or emanated from this District and because Defendants have caused harm to Class members residing in this District.

### III.    THE PARTIES

15.    Plaintiff Robert Kohn is a citizen of New Jersey. Since on or about January 25, 2010, he has paid Equifax an annual fee of approximately $129.95 to monitor his credit file and provide other services that would allow him to ensure the safety and security of his identify, credit, finances, and reputation. As part of his agreement with Equifax, he entrusted Defendants with his PII. According to Equifax, the same information Mr. Kohn provided may have been compromised in this data breach. As a result, Mr. Kohn has expended and will continue to expend time and resources addressing the resulting risks to his identity, credit, finances, and reputation.

16.    Plaintiff Susan Kohn is a citizen of New Jersey. Since on or about January 1, 2008, she has paid Equifax an annual fee of between $129.95 and $149.50 to monitor her credit file and offer services that would allow her to ensure the safety and security of her identify, credit, finances, and reputation. As part of her agreement with Equifax, she entrusted Defendants with her PII. According to Equifax, the same information Mrs. Kohn provided may have been compromised in this data breach. As a result, Mrs. Kohn has expended and will continue to expend time and resources addressing the resulting risks to her identity, credit, finances, and reputation.

17.    Plaintiff Dr. Mark Isacoff is a citizen of New York. Since on or about June 19, 2016, he has paid Equifax an annual fee of $199.95 to monitor his credit file and offer services that would allow him to ensure the safety and security of his identify, credit, finances, and reputation. As part of his agreement with Equifax, Dr. Isacoff entrusted Defendants with his PII. According to Equifax, the same information Dr. Isacoff provided may have been compromised in this data breach. As a result, Dr. Isacoff has expended and will continue to expend time and resources addressing the resulting risks to his identity, credit, finances, and reputation.

18.     Equifax Incorporated is a global consumer credit reporting agency and information solutions company incorporated in Georgia, with its principal place of business located at 1550 Peachtree Street NW, Atlanta, Georgia 30309.

19.     Equifax Information Services LLC is a subsidiary of Equifax Incorporated that collects consumer information and reports that information to financial institutions. Equifax Information Services LLC is incorporated in Georgia and maintains its principal place of business at 1550 Peachtree Street NW, Atlanta, Georgia 30309.

20.     Defendants hold themselves out as doing business in "24 countries" including the United States; they do business nationwide, including in the State of New York and in this District.

## IV.     FACTUAL ALLEGATIONS

### A.     Equifax Failed to Protect Plaintiffs' Most Highly Secretive Information Causing Them Substantial Injury

21.     On September 7, 2017, Equifax publicly disclosed an extensive and wide-reaching security breach (the "Hack") resulting in third-parties obtaining unauthorized access to confidential and secure information ("PII") belonging to 143 million United States consumers.[4]

22.     Equifax admits that its United States website application suffered a security breach that allowed unauthorized "criminals" to access the PII of Equifax consumers and customers—including but not limited to names, birth dates, addresses, Social Security Numbers, and for some 209,000 consumers, credit card identifiers and driver's license numbers.[5]

---

[4] Equifax Data Breach Website, https://www.equifaxsecurity2017.com (last visited Sept. 15, 2017).

[5] *Id.*

23.     The information Equifax allowed "criminals" to access can and likely will be employed to effect massive identity theft, invade bank accounts, make unauthorized purchases, and commit various crimes in the names of the unsuspecting victims.

24.     The breach is particularly egregious because the vast majority of information Equifax allowed unauthorized third-parties to access was obtained without the knowledge or consent of consumers, often reported by lending institutions and other third-party entities.

25.     For others, like Plaintiffs, the breach is *even more* disturbing, because Plaintiffs paid Equifax to protect the very information Equifax compromised.

26.     Plaintiffs have been customers of Equifax since as early as 2008.

27.     Respectively, Plaintiffs pay Equifax an annual fee of between $129.50 and $199.95 for "Equifax ID Patrol," "Equifax Credit Watch Gold With 3-in-1 Monitoring alert," or "Equifax Complete Premier Plan" services. Plaintiffs expected Equifax to monitor their credit, alert them of any unauthorized and suspicious activity, and insure them against identity theft and data breaches resulting in losses to them. Equifax agreed to provide those services.

28.     In offering Plaintiffs these products, Equifax *required* Plaintiffs to provide their most secretive personal identifiers, [6] along with a nominal annual fee, in exchange for a "greater sense of comfort" from the risks of "identity theft."[7]

29.     Plaintiffs fully expected Equifax to safeguard their information with the highest level of security, relying on Equifax's representations that it is "committed to protecting the security of [customers'] personal information" through the "use [of] technical, administrative and

---

[6] Equifax Terms of Use, http://www.equifax.com/terms/ (last visited Sept. 16, 2017).

[7] *Id.* (Equifax states that its identity protection products will help customers "prevent, detect and/or respond to incidents involving certain forms of theft or misuse of Your personal information").

physical security measures that comply with applicable federal and state laws[,]"[8] and that Equifax "pride[s] [itself] on being a leader in managing and protecting data[.]" Absent these guarantees, Plaintiffs would never have provided Equifax with their PII.

30.    Equifax was warned of its vulnerability to a data breach like this one, due in part to their outdated security measures, and was provided with a patch security update that could cure the issue as early as March 7, 2017.[9] Despite knowing about a fix for the problem, Equifax failed to adequately implement the remedy, thereby recklessly endangering the PII customers like Plaintiffs entrusted them with.

31.    On July 29, 2017, Equifax "observed suspicious network traffic" and "investigated" the matter.[10]

32.    On July 30, 2017, Equifax again observed suspicious network traffic.

33.    On August 2, 2017, Equifax engaged an outside security consulting firm to review the "scope of the intrusion, including the specific data impacted."[11]

34.    Therefore, Equifax knew of the breach at least as early as July 29, 2017, but chose not to immediately inform consumers.

35.    Worse, Plaintiffs are direct customers of Equifax, paying Equifax to alert them of any potential risks to their credit or identity. In choosing not to immediately alert Plaintiffs of the

---

[8] Equifax Privacy, Equifax Personal Products, Apr. 24, 2017, http://www.equifax.com/privacy/equifax-personal-products (last visited Sept. 17, 2017).

[9] Elizabeth Weise and Nathan Bomey, USA TODAY, *Equifax had patch 2 months before hack and didn't install it, security group says*, https://www.usatoday.com/story/money/2017/09/14/equifax-identity-theft-hackers-apache-struts/665100001/ (published Sept. 14, 2017).

[10] Equifax Data Breach Website, https://www.equifaxsecurity2017.com (last visited Sept. 15, 2017).

[11] *Id.*

breach and ensuing risks to their credit and identity, Equifax not only breached its legal, statutory, and ethical duties to Plaintiffs, but failed to deliver the services that Plaintiffs directly contracted with them to provide.

36.    Plaintiffs did not authorize Equifax to disclose their PII. Due to the unauthorized disclosure, Plaintiffs have suffered harm, and will continue to suffer significant risk of substantial injury, including identify theft, harm to their credit, and harms related to their reputation in the community and with businesses with which they deal.

37.    While leaving Plaintiffs with severe risk of future harm, and before releasing news of the breach to its customers or the general public, Equifax executives used insider information to offload substantial holdings in Equifax, placing their interests before Plaintiffs' and others whom Equifax substantially and irreparably harmed.

38.    Equifax unreasonably, negligently, and on information and belief, recklessly failed to take adequate precautions in storing and securing Plaintiffs' PII, resulting in an extraordinary identity theft event.

39.    As a direct and proximate result of Equifax's actions and omissions, Plaintiffs have suffered and will continue to suffer harm, injury, and damage. The unauthorized disclosure and use of Plaintiffs PII has caused injuries contemplated by our congressional leaders, and which they sought to prevent by enacting the Fair Credit Reporting Act ("FCRA") and the Graham-Leach-Biley Act ("GLBA").

40.    As a direct and proximate result of Equifax's actions and omissions, Plaintiffs have had to spend time and resources mitigating the injuries and risk of continued injury caused by Equifax's wrongdoing, including investigating the extent to which their PII has been compromised, taking additional precautions to monitor credit and identity activity, and contacting

counsel to gather information on how to best protect themselves into the future. These harms were reasonably foreseeable to Equifax.

### B. Equifax Holds Itself Out as a Leader in Data Protection and Therefore Knows it Has to Safeguard Plaintiffs' Information

41.    Equifax is a publicly traded, multi-billion-dollar corporation that generates more than $3 billion dollars annually to collect, use, protect, and report on consumer PII.

42.    Equifax also earns substantial revenue from selling credit monitoring products and "identity theft protection" services.

43.    Despite Equifax holding itself out as a sophisticated data protection and information company that "pride[s] [itself] on being a leader in managing and protecting data[,]" and advertising that it is "committed to protecting the security of [customers'] personal information" through the "use [of] technical, administrative and physical security measures that comply with applicable federal and state laws[,]"[12] Equifax has done just the opposite.

44.    Based on Equifax's self-proclaimed expertise and leadership in managing and protecting data, Equifax knows how important protecting and safeguarding PII is.[13]

### C. Equifax Knows That Failing to Protect Plaintiffs' Personal Information Will Result in Devastating Injuries to Plaintiffs

45.    Equifax advertises and sells identity theft protection products that allegedly help customers "prevent, detect and/or respond to incidents involving certain forms of theft or misuse of Your personal information[.]"[14]

---

[12] Equifax Privacy, Equifax Personal Products, Apr. 24, 2017, http://www.equifax.com/privacy/equifax-personal-products (last visited Sept. 17, 2017).

[13] Equifax, Identity Theft Protection Products, https://www.equifax.com/personal/products/identity-theft-protection (last visited Sept. 16, 2017).

[14] Equifax Terms of Use, http://www.equifax.com/terms/ (last visited Sept. 16, 2017).

46.    In order to use Equifax identity theft protection services, Equifax *requires* customers, including Plaintiffs, to provide their most secretive personal identifiers.[15] Equifax specifically requires Plaintiffs to acknowledge that "[a]s needed to provide Products to You, You authorize and instruct Us to obtain, monitor, and compile Your: (i) credit information from one or more consumer reporting agencies; (ii) [']non-public personal information['], [']personal information['], and/or [']highly restricted personal information['] about or concerning You as defined by the Gramm-Leach-Bliley Act (15 U.S.C. sec 6801 et seq); and (iii) other personal information."[16]

47.    Equifax also requires customers to provide "[']written instructions['] in accordance with the FCRA for Us to obtain credit information about You from one or more of the three nationwide consumer reporting agencies and You hereby authorize Us to access Your personal credit information in order to provide the Products."[17]

48.    Equifax advertises that by providing highly confidential information along with a nominal annual fee, Equifax will help customers obtain a "greater sense of comfort" from the risks of "identity theft."[18]

49.    Therefore, Equifax clearly understands it has a legal and contractual obligation to protect Plaintiffs' PII.

---

[15] Equifax Terms of Use, http://www.equifax.com/terms/ (last visited Sept. 16, 2017).

[16] *Id.*

[17] *Id.*

[18] Equifax, Identity Theft Protection Products, https://www.equifax.com/personal/products/identity-theft-protection (last visited Sept. 16, 2017); Equifax Terms of Use, http://www.equifax.com/terms/ (last visited Sept. 8, 2017).

50.    Equifax further understands that the improper and unauthorized use of Plaintiffs' PII poses significant risk of harm to its customers.

51.    As part of its "identity theft protection" services, Equifax offers customers an "internet scanning" service that "scans thousands of Internet sites where consumers' personal information is suspected of being bought and sold[.]"[19]

52.    As such, Equifax is not only familiar with the risks associated with identity theft, but is well-aware of the particular risks posed by electronic and internet-based identity theft.

53.    Together, Equifax's actions and advertisements prove it is aware of the need to protect Plaintiffs' PII and knows the risks associated with not doing so.

## D.    Plaintiffs are Victims of Identity Theft Because Equifax Failed to Protect Their Information

54.    Equifax defines the term "identity theft" as "when your name, address, social security number, debit card, credit card or certain other personally identifiable information ("PII") is *stolen*, *lost*, or otherwise used without your knowledge or approval to commit crimes or other fraud in the United States of America."[20]

55.    Plaintiffs consulted Equifax and learned that their PII was implicated in this Hack.

56.    Equifax admits that the PII in its possession was "accessed[.]"[21]

57.    Plaintiffs trusted Equifax to help them obtain a "greater sense of comfort" from the risks of "identity theft" as Equifax promised.

---

[19] Equifax, Identity Theft Protection Products, https://www.equifax.com/personal/products/identity-theft-protection (last visited Sept. 16, 2017).

[20] Equifax Terms of Use, http://www.equifax.com/terms/ (last visited Sept. 16, 2017) (emphasis added).

[21] Equifax Data Breach Website, https://www.equifaxsecurity2017.com (last visited Sept. 15, 2017).

58.     Instead, Plaintiffs are now victims of identity theft because Equifax mishandled their PII, the very information they paid Equifax to protect.

**E.  Equifax Acted In Bad Faith By Failing to Mitigate the Harm It Caused and By Not Offering Any Practical Resolution**

59.     Once Equifax "discovered the unauthorized access on July 29[, 2017]" it failed to adequately mitigate the risks it exposed Plaintiffs to, by among other things, not immediately notifying Plaintiffs of this Hack.[22]

60.     This massive breach began on May 13, 2017, but Equifax did not disclose the breach to the public, or its customers, until September 2017.[23]

61.     By failing to timely disclose or alert Plaintiffs of the occurrence, Equifax caused increased risks of exposure and injury to Plaintiffs.

62.     Since publicly announcing the breach, Equifax has further perpetuated its breach of duty and breach of contract, and has acted in continuous bad faith, by failing to provide Plaintiffs with complete and accurate information about the scope of the Hack and the extent to which their information has been compromised.

63.     For Plaintiffs, Equifax's failure to immediately and fully notify them of the breach is astounding in light of Equifax's promise to provide "Privacy Monitoring and Protection[,]" and a "greater sense of comfort" from the risks of "identity theft[.]"

64.     Equifax *admits* knowing that Plaintiffs' information was potentially compromised before publicly announcing the Hack,[24] but failed to immediately alert them, as Plaintiffs expected under their written agreements with Equifax.

---

[22] Equifax Data Breach Website, https://www.equifaxsecurity2017.com (last visited Sept. 15, 2017).

[23] *Id.*

65.      Instead, Plaintiffs were treated like all other consumers, first learning their PII was comprised via Equifax's public announcement.

66.      Therefore, despite agreeing to protect Plaintiffs' PII and alert them of risks of identity theft, Equifax provided Plaintiffs—paying customers of Equifax's identity theft protection services—*no greater benefit* than any other, non-paying consumer.

67.      Equifax's failure to alert Plaintiffs that their PII was compromised before the rest of the non-customer consumers, proves that the services Plaintiffs paid Equifax to provide were essentially meaningless and valueless.

68.      Notwithstanding the valueless nature of Equifax's services, Equifax continues to charge Plaintiffs for their identity theft protection products.

69.      Only after extreme public and political pressure did Equifax acknowledge their obligation to help mitigate damages. And even then, Equifax's response has been entirely unacceptable. While exposing Plaintiffs to identity theft, a problem that will plague them for the remainder of their lives, Equifax flouts its obligation to mitigate the damage caused by unsatisfactorily offering Plaintiffs "complimentary" services "for one year[.]"

70.      More absurdly, this offer is of no assistance to Plaintiffs, who were already paying Equifax for services including Equifax's self-proclaimed "Most Comprehensive . . . Identity Protection Product[.]"[25]

71.      In light of the fact that Plaintiffs' trust in Equifax to provide identity theft protection services is the reason they are now victims of identity theft, offering Plaintiffs

---

[24] *Id.* ("On August 2, 2017, Equifax contacted a leading, independent cybersecurity firm, Mandiant, to assist in conducting a privileged, comprehensive forensic review to determine the scope of the intrusion, including the specific data impacted.").

[25] Equifax Premier Plan, https://www.equifax.com/personal/products/credit/monitoring-and-reports (last visited Sept. 17, 2017).

continued service with a less-comprehensive product as a remedy is ludicrous and insulting, and is evidence of Equifax's bad faith response to this unprecedented breach.

## V.     THIS ACTION IS NOT SUBJECT TO ARBITRATION BECAUSE EQUIFAX EXPRESSLY WAIVED ITS MANDATORY ARBITRATION AND CLASS-ACTION WAIVER PROVISION

72.     Before the Hack, Equifax required all customers to enter into a Terms of Use agreement as part of their purchase of Equifax products. The agreement began by stating: "THIS PRODUCT AGREEMENT AND TERMS OF USE ("AGREEMENT") CONTAINS THE TERMS AND CONDITIONS UPON WHICH YOU MAY PURCHASE AND USE OUR PRODUCTS THROUGH THE WWW.EQUIFAX.COM, WWW.IDENTITYPROTECTION.COM AND WWW.IDPROTECTION.COM WEBSITES AND ALL OTHER WEBSITES OWNED AND OPERATED BY EQUIFAX AND ITS AFFILIATES ("SITE")."[26]

73.     Paragraph Number Four of that agreement contained language requiring customers: "TO RESOLVE ALL DISPUTES BY BINDING INDIVIDUAL ARBITRATION. PLEASE READ THIS ENTIRE SECTION CAREFULLY BECAUSE IT AFFECTS YOUR LEGAL RIGHTS BY REQUIRING ARBITRATION OF DISPUTES (EXCEPT AS SET FORTH BELOW) AND A WAIVER OF THE ABILITY TO BRING OR PARTICIPATE IN A CLASS ACTION, CLASS ARBITRATION, OR OTHER REPRESENTATIVE ACTION. ARBITRATION PROVIDES A QUICK AND COST EFFECTIVE MECHANISM FOR

---

[26] January 13, 2017 Archived Equifax Terms of Use, http://web.archive.org/web/20170320015608/http://www.equifax.com/terms/ (last visited Sept. 16, 2017).

RESOLVING DISPUTES, BUT YOU SHOULD BE AWARE THAT IT ALSO LIMITS YOUR

RIGHTS TO DISCOVERY AND APPEAL."[27]

74.     In January 2017, the Terms of Use agreement included a binding arbitration

clause that read:

> Binding Arbitration. Any Claim (as defined below) raised by either
> You or Equifax against the other shall be subject to mandatory,
> binding arbitration. As used in this arbitration provision, the term
> "Claim" or "Claims" means any claim, dispute, or controversy
> between You and Us relating in any way to Your relationship with
> Equifax, including but not limited to any Claim arising from or
> relating to this Agreement, the Products or this Site, or any
> information You receive from Us, whether based on contract,
> statute, common law, regulation, ordinance, tort, or any other legal
> or equitable theory, regardless of what remedy is sought. This
> arbitration obligation extends to claims You may assert against
> Equifax's parents, subsidiaries, affiliates, successors, assigns,
> employees, and agents. The term "Claim" shall have the broadest
> possible construction, except that it does not include any claim,
> dispute or controversy in which You contend that EIS violated the
> FCRA. Any claim, dispute, or controversy in which You contend
> that EIS violated the FCRA is not subject to this provision and
> shall not be resolved by arbitration.[28]

75.     As of September 12, 2017, however, Equifax amended the Terms of Use

agreement, explicitly waiving its applicability to this data breach incident: "THIS AGREEMENT

. . . DOES NOT APPLY TO . . . THE EQUIFAX CYBERSECURITY INCIDENT

ANNOUNCED ON SEPTEMBER 7, 2017."[29]

76.     Highlighting Equifax's desire to waive applicability of the Terms of Use

agreement as related to this breach, Equifax amended the mandatory arbitration provision to

inform customers that claims arising out of this data breach incident were not subject to

---

[27] *Id.*

[28] *Id.*

[29] Equifax Terms of Use, http://www.equifax.com/terms/ (last visited Sept. 16, 2017).

mandatory arbitration: "Any claim, dispute, or controversy in which You contend that [Equifax] violated the FCRA is not subject to this provision and shall not be resolved by arbitration. The term "Claim" or "Claims" also *does not apply to any claim, dispute, or controversy related . . . to the Equifax cybersecurity incident announced on September 7, 2017*[.]"[30]

77.    Therefore, Equifax clearly desired to remove claims, disputes, or controversies alleging FCRA violations or relating to this data breach from mandatory arbitration.

78.    As such, Plaintiffs bring this suit on their own behalf, and all of those similarly situated.

## VI.    CLASS ACTION ALLEGATIONS

79.    The Classes' claims all derive directly from a common course of conduct by Defendants. This case is about Defendants' responsibility to protect Plaintiffs' PII, their promise to Plaintiffs that they would, and their irresponsible and harmful conduct in failing to do so. Further, unlike the general consumer population, Plaintiffs directly relied on Defendants' promises to securely handle their PII, which Plaintiffs paid them to protect and monitor. Defendants engaged in uniform and standardized conduct toward the Classes. They did not differentiate, in degree of care of candor, in their actions or inactions, or in the content of their statements or omissions, among individual Class members. The objective facts on these subjects are the same for all Class members. Within each Claim for Relief asserted by the respective Classes, the same legal standards govern. Accordingly, Plaintiffs bring this lawsuit as a class action on their own behalf and on behalf of all other persons similarly situated as members of the proposed Classes pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) and/or (b)(2)

---

[30] *Id.* (emphasis added).

and/or (c)(4). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

### A. Nationwide Consumer Class

80.     Plaintiffs bring this action and seek to certify and maintain it as a class action under Rules 23(a); (b)(2); and/or (b)(3); and/or (c)(4) of the Federal Rules of Civil Procedure on behalf of themselves and a Nationwide Consumer Class defined as:

> All persons in the United States who entered into an agreement for services or products with, or who otherwise directly transmitted to Defendants, any of their PII, and whose PII was accessed without authorization in the data breach Equifax announced in September 2017.

### B. New Jersey Consumer Class

81.     Plaintiffs Robert Kohn and Susan Kohn allege class action claims on behalf of a class of consumers in New Jersey ("New Jersey Class"). This class is defined as:

> All New Jersey residents who entered into an agreement for services or products with, or who otherwise directly transmitted to Defendants, any of their PII, and whose PII was accessed without authorization in the data breach Equifax announced in September 2017.

### C. New York Consumer Class

82.     Plaintiff Dr. Mark Isacoff alleges class action claims on behalf of a class of consumers in New York ("New York Class"). This class is defined as:

> All New York residents who entered into an agreement for services or products with, or who otherwise directly transmitted to Defendants, any of their PII, and whose PII was accessed without authorization in the data breach Equifax announced in September 2017.

### D. Definitions and Exclusions

83.     The Nationwide Consumer Class, the New Jersey Class, and the New York Class, and their members, are sometimes referred to herein as the "Class" or "Classes."

84.     Excluded from each Class are Defendants and their employees, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliates of Defendants; Class Counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case.

### E.     Numerosity and Ascertainability

85.     This action satisfies the requirements of Fed. R. Civ. P. 23(a)(1). There are, by Equifax's own admission, at least 143 million individuals affected by this data breach nationwide, and numerous victims in New Jersey and New York, many of which, like Plaintiffs, contracted with Equifax for credit alert and identity protection services. Individual joinder of all Class members is impracticable.

86.     Each of the Classes is ascertainable because its members can be readily identified using sales records, production records, and other information kept by Defendants or third-parties in the usual course of business and within their control. Plaintiffs anticipate providing appropriate notice to each certified Class, in compliance with Fed. R. Civ. P. 23(c)(2)(A) and/or (B), to be approved by the Court after class certification, or pursuant to court order under Fed. R. Civ. P. 23(d).

### F.     Commonality and Predominance of Common Issues

87.     This action satisfies the requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) because questions of law and fact that have common answers that are the same for each of the respective Classes predominate over questions affecting only individual Class members. These common issues include, without limitation, the following:

1.     Whether Equifax owed a duty to the Class members under federal or state law to protect their PII, provide timely notice of the unauthorized access, provide timely and accurate information as to the extent of the compromised PII, and provide meaningful and fair redress;

2.      Whether Equifax owed a contractual duty to the Class members to protect their PII, provide timely notice of the unauthorized access, provide timely and accurate information as to the extent of the compromised PII, and provide meaningful and fair redress;

3.      Whether Equifax breached such duty;

4.      Whether Equifax was negligent if failing to employ, design, or maintain adequate security measures, systems, and protocols, in ensuring the protection of the Class' confidential PII;

5.      Whether Defendants' negligence factored into the data breach;

6.      Whether Defendants knew or should have known about the "vulnerabilities" that allowed for "criminals" to gain unauthorized access to the Class' confidential PII;

7.      Whether Defendants knew or should have known that safeguards they employed to protect the Class' PII were insufficient;

8.      Whether Defendants' actions violated applicable state consumer protection laws;

9.      Whether Defendants' actions violated applicable federal consumer and identity protection laws;

10.     Whether Defendants acted appropriately in securing Plaintiffs' and Class members' personal information;

11.     Whether Defendants violated New York General Business Law §349;

12.     Whether Defendants' actions were the proximate cause of the Class' injuries;

13.     Whether Defendants acted with reckless disregard for the safety and security of the Class' PII;

14.     Whether the Class' injuries were exacerbated by Defendants' failure to timely and accurately provide notice of the breach;

15.     Whether Defendants publicly misrepresented that they would protect the Class' PII;

16.     Whether Defendants' unlawful and risky practices harmed Plaintiffs and the Classes;

17.    Whether Defendants breached their contractual obligations to the Class to monitor their credit and identify and provide "alerts" of suspicious activity as promised;

18.    Whether Defendants breached their contractual duty of good faith and fair dealing by failing to timely notify Class members of the breach;

19.    Whether Defendants have been unjustly enriched by their conduct;

20.    Whether Plaintiffs and other Class members overpaid for the Equifax's services in light of their improper handling of Plaintiffs' confidential information;

21.    Whether Plaintiffs and other Class members are entitled to damages and other monetary relief and, if so, in what amount;

22.    Whether Plaintiffs and Class members are entitled to declaratory relief; and

23.    Whether Plaintiffs and the Classes are entitled to equitable relief, including but not limited to, a preliminary and/or permanent injunction.

**G.    Typicality**

88.    This action satisfies the requirements of Fed. R. Civ. P. 23(a)(3) because Plaintiffs' claims are typical of the claims of the Class members, and arise from the same course of conduct by Defendants. The relief Plaintiffs seek is typical of the relief sought for the absent Class members.

**H.    Adequate Representation**

89.    Plaintiffs will fairly and adequately represent and protect the interests of the Classes. Plaintiffs have retained counsel with substantial experience in prosecuting consumer class actions, including actions involving tortious conduct, breach of contract, and consumer fraud.

90.    Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Classes, and have the financial resources to do so. Neither Plaintiffs nor their counsel have interests adverse to those of the Classes.

## I.    Superiority

91.    This action satisfies the requirements of Fed. R. Civ. P. 23(b)(2) because Defendants have acted and refused to act on grounds generally applicable to each Class, thereby making appropriate final injunctive and/or corresponding declaratory relief with respect to each Class as a whole.

92.    This action satisfies the requirements of Fed. R. Civ. P. 23(b)(3) because a class action is superior to other available methods for the fair and efficient adjudication of this controversy. The common questions of law and fact regarding Defendants' conduct and responsibility predominate over any questions affecting only individual Class members.

93.    Because the damages suffered by each individual Class member may be relatively small, the expense and burden of individual litigation would make it very difficult or impossible for individual Class members to redress the wrongs done to each of them individually, such that most or all Class members would have no rational economic interest in individually controlling the prosecution of specific actions, and the burden imposed on the judicial system by individual litigation by even a small fraction of the Class would be enormous, making class adjudication the superior alternative under Fed. R. Civ. P. 23(b)(3)(A).

94.    The conduct of this action as a class action presents far fewer management difficulties, far better conserves judicial resources and the parties' resources, and far more effectively protects the rights of each Class member than would piecemeal litigation. Compared to the expense, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation, the challenges of managing this action as a class action are outweighed by the benefits to the legitimate interests of the parties, the Court, and the public, of class treatment in this Court, making class adjudication superior to other alternatives, under Fed. R. Civ. P. 23(b)(3)(D).

95.    Plaintiffs are not aware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action. Rule 23 provides the Court with authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges. The Court may, on motion of Plaintiffs or on its own determination, certify a nationwide class, a New York, and/or a New Jersey class for claims sharing common legal questions; utilize the provisions of Rule 23(c)(4) to certify any particular claims, issues, or common questions of fact or law for class-wide adjudication; certify and adjudicate bellwether class claims; and utilize Rule 23(c)(5) to divide any Class into subclasses.

## VII.    CLAIMS FOR RELIEF

### COUNT I
### FAIR CREDIT REPORTING ACT ("FCRA") VIOLATIONS

96.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

97.    Plaintiffs bring this Count against Defendants on behalf of members of the Nationwide Consumer Class. In the event a nationwide class cannot be maintained on this claim, this claim is asserted by the New Jersey Class and the New York Class.

98.    The PII at issue was a "consumer report" within the meaning of the FCRA (15 U.S.C. § 1681a(d)) because the PII was a communication of information that bears on the credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living of Plaintiffs and the members of the Class that was expected to be used or collected to serve as a factor in establishing Plaintiffs' and Class Members' eligibility for credit.

99.     Equifax is a consumer reporting agency within the meaning of the FCRA (15 U.S.C. § 1681e(a)) because it regularly engages, for monetary fees, in assembling and evaluating consumer credit information and other consumer information for the purpose of furnishing consumer reports to third-parties, such as banks, cell phone carriers, and other lenders and retailers. Defendants knew or had reason to know that Plaintiffs and the Class would reasonably rely on their misrepresentation and omissions.

100.     Under the FCRA, Equifax was required to maintain reasonable procedures that are designed to limit the furnishing of consumer reports to six circumstances ("purposes") identified at 15 U.S.C. § 1681b.

101.     Equifax violated the FCRA by furnishing the PII consumer reports to the unauthorized individuals or entities that accessed the PII through the Equifax website because furnishing consumer reports in such circumstances is not one of permitted the "purposes" under the FCRA. In addition, Equifax failed to maintain reasonable technological or other procedures designed to prevent such impermissible furnishing of consumer reports.

102.     In view of Equifax's knowledge, experience, and expertise in consumer data security, prior failures in its systems, and the fact that the breach here was so vast, affected such core consumer information, and went on for so long without detection, it also is clear that Equifax acted willfully or recklessly in its failure to safeguard the PII at issue here.

103.      Equifax's willful and/or reckless violations of the FCRA provided the means for third-parties to access, obtain, and misuse the PII of Plaintiffs and the Class Members without authorization and for purposes not permitted by the FCRA.

104.     Equifax's violation of its duties under the FCRA constitutes a de facto injury to Plaintiffs and Class members. Equifax's violation of the FCRA has direct and proximately

injured Plaintiffs and members of the National Class, including by foreseeably causing them to

expend time and resources investigating the extent to which their PII has been compromised,

taking reasonable steps to minimize the extent to which the breach puts their credit, reputation,

and finances at risk, and taking reasonable steps, now and in the future, to redress fraud, identity

theft, and similarly foreseeable consequences of criminals obtaining the PII.

105.    Pursuant to 15 U.S.C. § 1681n(a)(1)(A), Plaintiffs and each Class

Member is entitled to recover actual damages, or statutory damages of not less than $100,

nor more than $1,000.

## COUNT II
## NEGLIGENCE

106.    Plaintiffs hereby incorporate by reference the allegations contained in the

preceding paragraphs of this Complaint, as if fully set forth herein.

107.    Plaintiffs bring this Count against Defendants on behalf of members of the

Nationwide Consumer Class. In the event a nationwide class cannot be maintained on this claim,

this claim is asserted by the New Jersey Class and the New York Class.

108.    Equifax owed Plaintiffs and the members of the Classes a duty of care

commensurate with the sensitive nature of the PII with which it was entrusted. Equifax created

this duty through its voluntary actions in collecting and storing the PII for its own benefit, as well

as by its assurances that it would safeguard that information. In addition, given the nature of the

information at issue and the means by which Equifax acquires it—in furtherance of its business

endeavors—the relationship between Plaintiffs and Equifax is sufficiently close and akin in

privity, to give rise to a duty to the Plaintiffs.

109.    Equifax's duty required it, among other things, to design and employ cybersecurity systems, anti-hacking technologies, and intrusion detection and reporting systems sufficient to protect the PII from unauthorized access and to promptly alert Equifax to any such access and enable it to determine the extent of any compromised PII.

110.    Had Equifax designed, employed, and maintained appropriate technological and other systems, the PII would not have been compromised or, at a minimum, Equifax would have known of the unauthorized access sooner and would be able to accurately inform Plaintiffs and the other class members of the extent to which their PII has been compromised.

111.    Equifax breached its duties of care by, among other things, failing to maintain appropriate technological and other systems to prevent unauthorized access, to minimize the PII that any intrusion could compromise (i.e., less aggregation and weeding out unnecessary and stale data), and to promptly notify Equifax of a breach and enable Equifax to determine the extent of the PII that had been compromised so that, among other things, Equifax could timely notice affected consumers with accurate information to begin minimizing the impact of the incident.

112.    Equifax's breach of its duties provided the means for third-parties to access, obtain, and misuse the PII of Plaintiffs and the class members without authorization. It was reasonably foreseeable that such breaches would expose the PII to criminals and other unauthorized access.

113.    Equifax's breach of its duties has directly and proximately injured Plaintiffs and members of the Classes, including by foreseeably causing them to expend time and resources investigating the extent to which their PII has been compromised, taking reasonable steps to minimize the extent to which the breach puts their credit, reputation, and finances at risk, and

taking reasonable steps (nor or in the future) to redress fraud, identity theft, and similarly foreseeable consequences of unauthorized and criminal access to their PII.

114.    Plaintiffs and Class members are entitled to damages in an amount to be proven at trial.

## COUNT III
## NEGLIGENCE PER SE

115.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

116.    Plaintiffs bring this Count against Defendants on behalf of members of the Nationwide Consumer Class. In the event a nationwide class cannot be maintained on this claim, this claim is asserted by the New Jersey Class and the New York Class.

117.    Equifax violated duties owed under the FCRA.

118.    Equifax also violated the Graham-Leach-Biley Act ("GLBA"), 15 U.S.C. § 6801(b), because, among other things, Equifax failed to maintain and follow a written information security protocol with "administrative, technical, and physical safeguards" commensurate with the "size and complexity" of its business, the "nature and scope" of its activities, and, importantly, "the sensitivity of [the] consumer information at issue." 16 C.F.R. § 314.4.

119.    Equifax's violations of the FCRA and/or the GLBA constitute negligence per se.

120.    Plaintiffs and the members of the Classes were foreseeable victims of Equifax's violations of its statutory and regulatory duties. The GLBA, for example, was enacted "to insure the security and confidentiality of customer records and information," "to protect against any anticipated threats or hazards to the security or integrity of such records," and "to protect against unauthorized access to or use of such records or information which could results in substantial

harm or inconvenience to any customer." 15 U.S.C. § 6801(b).

121.     Equifax's breach of its duties provided the means for third-parties to access, obtain, and misuse the PII of Plaintiffs and the Classes without authorization. It was reasonably foreseeable that such breaches would expose the PII to criminals and other unauthorized access.

122.     Equifax's breach of its duties has directly and proximately injured Plaintiffs and the Classes, including by foreseeably causing them to expend time and resources investigating the extent to which their PII has been compromised, taking reasonable steps to minimize the extent to which the breach puts their credit, reputation, and finances at risk, and taking reasonable steps—now and in the future—to redress fraud, identity theft, and similarly foreseeable consequences of unauthorized and criminal access to their PII.

123.     Plaintiffs and the Classes are entitled to damages in an amount to be proven at trial.

## COUNT IV
## VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT
### (N.J. Stat. Ann. § 56:8-1, et seq.)

124.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

125.     Plaintiffs Robert Kohn and Susan Kohn bring this Count against Defendants on behalf of members of the New Jersey Class.

126.     The New Jersey Consumer Fraud Act prohibits "The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the

subsequent performance of such person as aforesaid, whether or not any person has in fact been

misled, deceived or damaged thereby . . . ." N.J. Stat. Ann. § 56:8-2. The Act also prohibits

"[t]he advertisement of merchandise as part of a plan or scheme not to sell the item or service so

advertised . . . ." N.J. Stat. Ann. § 56:8-2.2.

127.    Equifax, while operating in New Jersey, engaged, in unconscionable commercial

practices, deception, misrepresentation, and the knowing concealment, suppression, and

omission of material facts with intent that others rely on such concealment, suppression, and

omission, in connection with the sale and advertisement of services, in violation of N.J. Stat.

Ann. § 56:8-2. This includes:

- o   Advertising and selling Plaintiffs a product that was supposed to send "alerts about suspicious activities"[31] but failed to send the promised alerts despite Equifax having *direct knowledge* of "suspicious" network traffic compromising Plaintiffs' identity;[32]

- o   Advertising and selling Plaintiffs a product that was to allegedly "Help [You] Better Protect Yourself and Monitor the Credit You've Worked Hard to Earn[,]" and obtain a "Greater Sense of Comfort[,]"[33] and failing to provide those guarantees;

- o   Advertising and selling Plaintiffs *protection* from identity theft, and then *directly causing* the theft of their identity;

- o   Even after learning of the data breach and the fact that Equifax could no longer provide identity theft protection services, continuing to advertise and sell identity theft protection services on its website;

---

[31] Archived Version of Equifax Website, Personal Services, http://web.archive.org/web/20170324033735/https://www.equifax.com/personal (last visited Sept. 16, 2017).

[32] Equifax Data Breach Website, https://www.equifaxsecurity2017.com (last visited Sept. 15, 2017).

[33] Archived Version of Equifax Website, Personal Identity Theft Protection Services https://web.archive.org/web/20170828210352/https://www.equifax.com/personal/products/identity-theft-protection (last visited Sept. 16, 2017).

o Collecting, storing, and using vast quantities of highly sensitive PII concerning consumers in on-line, aggregated form over which the consumers themselves exercise no control and which Equifax failed to adequately protect from unauthorized and/or criminal access in violation of statutory and industry standards and its assurances to the public and to the entities that provide the PII to Equifax;

o Failing to employ technology and systems to promptly detect unauthorized access to the PII with which it was entrusted;

o Unreasonably delaying giving notice to consumers after it became aware of unauthorized access to the PII;

o Knowingly and fraudulently failing to provide accurate, timely information to consumers about the extent to which their PII has been compromised;

o Knowingly and fraudulently placing unreasonable and unlawful terms and conditions on consumers obtaining information about the extent to which their PII has been compromised;

o Knowingly and fraudulently misleading consumers to waive their legal rights in order to obtain information about the extent to which their PII has been compromised; and

o Knowingly and fraudulently coercing consumers into enrolling in Equifax Products and services to redress their injuries, which Plaintiffs had already been paying Defendants for.

128.    Equifax's breach of its duties has directly and proximately caused Plaintiffs and the New Jersey Class to suffer an ascertainable loss of money and property, including the loss of their PII, and foreseeably causing them to expend time and resources investigating the extent to which their PII has been compromised, taking reasonable steps to minimize the extent to which the breach puts their credit, reputation, and finances at risk, and taking reasonable steps—now and in the future—to redress fraud, identity theft, and similarly foreseeable consequences of unauthorized and criminal access to their PII.

129.    The above unlawful and deceptive acts and practices by Equifax were

immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiffs that they could not reasonably avoid. This substantial injury outweighed any benefits to consumers or to competition.

130.    Equifax knew or should have known that its computer systems and data security practices were inadequate to safeguard Plaintiffs' Class' PII and that risk of a data breach or theft was highly likely. Equifax's actions in engaging in the abovenamed unfair practices and deceptive acts were negligent, knowing and willful.

131.    Plaintiffs and the other Class members seek treble damages and attorneys' fees pursuant to N.J. Stat. Ann. § 56:8-19.

## COUNT V
## VIOLATION OF NEW JERSEY CUSTOMER SECURITY BREACH DISCLOSURE ACT

132.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

133.    Plaintiffs Robert Kohn and Susan Kohn bring this Count against Defendants on behalf of members of the New Jersey Class.

134.    Under N.J.S.A. § 56:8-163(b), "[a]ny business … that compiles or maintains computerized records that include personal information on behalf of another business or public entity shall notify that business or public entity, who shall notify its New Jersey customers … of any breach of security of the computerized records immediately following discovery, if the personal information was, or is reasonably believed to have been, accessed by an unauthorized person."

135.    Equifax is a business that compiles or maintains computerized records that include personal information on behalf of another business under N.J.S.A. § 56:8-163(b).

136.    Plaintiffs' and the New Jersey Class members' PII (including but not limited to names, addresses, and social security numbers) includes personal information covered under N.J.S.A. §§ 56:8-163, et seq.

137.    Because Equifax discovered a breach of its security system in which personal information was acquired by an unauthorized person and the personal information was not secured, Equifax had an obligation to disclose the breach in a timely and accurate fashion as mandated under N.J.S.A. §§ 56:8-163, et seq.

138.    By failing to disclose the breach in a timely and accurate manner, Equifax violated N.J.S.A. § 56:8-163(b).

139.    As a direct and proximate result of Equifax's violations of N.J.S.A. § 56:8-163(b), Plaintiffs and the New Jersey Class members suffered damages as described above.

140.    Plaintiffs and the New Jersey Class seek relief under N.J.S.A. 56:8-19, including but not limited to treble damages in an amount to be proven at trial, attorneys fees and costs, and injunctive relief.

## COUNT VI
## VIOLATION OF §349 OF NEW YORK GENERAL BUSINESS LAW

141.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

142.    Plaintiff Dr. Mark Isacoff brings this Count against Defendants on behalf of members of the New York Class.

143.    New York General Business Law ("GBL") §349 makes unlawful any "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in New York.

144.    By reason of the conduct alleged herein, Equifax engaged in deceptive acts and practices within the meaning of the GBL.

145.    Equifax stored the personal information of Plaintiffs and Class members in Equifax's consumer information databases. Equifax represented to Plaintiffs and Class members that their personal information was secure and would remain private.

146.    Equifax violated GBL §349 by misleadingly providing on its website that, *e.g.*, "[w]e limit access to your personal information," "[w]e are committed to protecting the security of your information through procedures and technology designed for this purpose," and "[w]e have reasonable physical, technical and procedural safeguards to help protect your personal information."

147.    Plaintiffs and Class members were entitled to, and did, assume Equifax would take appropriate measures to keep their personal information safe. Equifax did not disclose at any time that Plaintiffs' personal information was vulnerable to hackers because Equifax's data security measures were inadequate and outdated.

148.    Equifax knew or should have known it did not employ reasonable measures that would have kept Plaintiffs' and the other Class members' personal and financial information secure and prevented the loss or misuse of Plaintiffs' and the other Class members' personal and financial information.

149.    Equifax's representations that it would secure and protect the personal and financial information of Plaintiffs and Class members were facts that reasonable persons could be expected to rely upon when deciding whether to conduct business with Equifax. Equifax's misrepresentations and omissions are likely to mislead and did materially mislead Plaintiffs and other reasonable consumers.

150.    Equifax violated GBL §349 by misrepresenting, both by affirmative conduct and by omission, the safety of its many systems and services, specifically the security thereof, and its ability to safely store Plaintiffs' and Class members' personal information. Equifax also violated GBL §349 by failing to immediately notify Plaintiffs and the other Class members of the data breach. If Plaintiffs and Class members had been notified in an appropriate fashion, they could have taken precautions to safeguard their personal information.

151.    Equifax also violated its commitment to maintain the confidentiality and security of Plaintiffs' and Class members' personal information, and failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security.

152.    Plaintiffs and the other Class members suffered injury in fact and lost money or property as the result of Equifax's failure to secure Plaintiffs' and Class members' personal information contained in Equifax's servers and/or databases. In particular, Plaintiffs and Class members have suffered or are in imminent risk of suffering from forged credit applications and tax returns; improper or fraudulent charges to their credit/debit card accounts; and other similar harm, all as a result of Equifax's misconduct. In addition, Plaintiffs' personal information was stolen and is in the hands of criminals who will use it for their own advantage, or is being sold for value, making it clear that the hacked information is of tangible value. Plaintiffs and Class members will also have to expend substantial sums of money to obtain credit freezes or additional identity theft protection services.

153.    As a result of Equifax's violations of GBL §349, Plaintiffs and the other Class members are entitled to restitution and injunctive relief.

## COUNT VII
## <u>BREACH OF CONTRACT</u>

154.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

155.    Plaintiffs bring this Count against Defendants on behalf of members of the Nationwide Consumer Class. In the alternative, this Claim is asserted on behalf of the New Jersey Class and the New York Class.

156.    Plaintiffs contracted with Defendants for Equifax ID Patrol, Equifax 3-in-1 Credit Monitoring, and Equifax Premier services.

157.    Plaintiffs paid Equifax an annual fee of between $129.50 and $199.95 for these services.

158.    As part of this agreement, Equifax promised to protect "the security of [the customers'] personal information" it collected in furtherance of offering its identity theft protection services through the "use [of] technical, administrative and physical security measures that comply with applicable federal and state laws[.]"[34]

159.    Defendants breached their contractual obligation to Plaintiffs by not securing the PII within their possession.

160.    Defendants advertised that their products would "Help [You] Better Protect Yourself and Monitor the Credit You've Worked Hard to Earn[;]" and obtain a "Greater Sense of Comfort[.]"[35]

---

[34] Equifax Privacy, Equifax Personal Products, Apr. 24, 2017, http://www.equifax.com/privacy/equifax-personal-products (last visited Sept. 17, 2017).

[35] Archived Version of Equifax Website, Personal Identity Theft Protection Services, https://web.archive.org/web/20170828210352/https://www.equifax.com/personal/products/identity-theft-protection (last visited Sept. 16, 2017).

161.    Defendants also promised to provide Plaintiffs with "alerts about suspicious activities[.]"[36]

162.    Plaintiffs were not "alerted" about "suspicious activity" regarding risks to their identity from this data breach, risks Equifax *actually* knew about. Instead, Plaintiffs were treated like all other consumers, first learning their PII was comprised via Equifax's public announcement.

163.    As such, Equifax provided Plaintiffs, paying customers of their identity theft protection services, no greater benefit than any other, non-paying consumer. As is clear by Equifax's failure to alert Plaintiffs before the rest of the non-customer consumers that their PII was compromised, the services Plaintiffs paid Equifax to provide were essentially meaningless and valueless.

164.    Defendants also breached their duty of good faith and fair dealing, by, among other things: (i). failing to immediately inform Plaintiffs that their information had been compromised in the breach; (ii). failing to take necessary steps to mitigate Plaintiffs' damages and injuries; and (iii). continuing to offer for sale on their website identity theft protection services, even after knowing that this data breach renders them incapable of so providing.

165.    As a result of Equifax's bad faith and flagrant violations of the agreement they entered into with Plaintiffs, Plaintiffs have suffered and will continue to suffer damages, including, but not limited to: legal and other fees and expenses related to re-securing their PII, and legal fees and expenses related to this litigation and any litigation that may ensue due to Plaintiffs' PII being compromised and used without their authorization.

---

[36] Archived Version of Equifax Website, Personal Services, http://web.archive.org/web/20170324033735/https://www.equifax.com/personal (last visited Sept. 16, 2017).

166.    Plaintiffs and the National Class seek relief including but not limited to damages, in an amount to be proven at trial, but not less than the amount they paid Equifax for valueless identity theft protection services.

## COUNT VIII
## BREACH OF FIDUCIARY DUTY

167.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

168.    Plaintiffs bring this Count against Defendants on behalf of members of the Nationwide Consumer Class. In the alternative, this Claim is asserted on behalf of the New Jersey Class and the New York Class.

169.    Pursuant to the agreement between Plaintiffs and Equifax, Equifax owed Plaintiffs a fiduciary duty with regard to, among other things, the safe-keeping of their PII.

170.    Equifax owed Plaintiffs fiduciary obligations of trust, loyalty, good faith and due care, and were required to use their utmost ability to protect Plaintiffs' PII.

171.    As fiduciaries, to discharge these duties, Defendants were and are required to exercise prudent supervision over Plaintiffs' PII.

172.    Equifax had a duty and ample opportunity to secure the information in its possession.

173.    Plaintiffs placed their trust and confidence in Defendants by relying upon them for several years to provide credit reporting and identity theft protection services.

174.    Equifax breached these duties when they failed to adequately protect the highly confidential PII entrusted to them, and to provide Plaintiffs with complete, accurate, and timely information about the breach.

175.   Equifax's conduct, as set forth herein, constitutes conscious misbehavior and recklessness.

176.   Equifax's breach of their fiduciary duties proximately caused Plaintiffs' damages.

177.   As a result of Equifax's breach, Plaintiffs have suffered and will continue to suffer damages, including, but not limited to, legal and other fees and expenses related to the re-securing their PII, fees and expenses related any litigation that may ensue due to their PII being compromised and used without their authorization, and other damages.

178.   Equifax also acted with malice and/or wanton and willful disregard of the foreseeable harm to Plaintiffs. Equifax is well-aware of the likelihood that serious harm to Plaintiffs would arise from their egregious conduct and/or actions. Equifax knew about the vulnerabilities in their electronic information storage systems and failed to adequately update their systems despite having the capabilities and technology to do so, with limited comparative cost. As alleged herein, Plaintiffs are entitled to punitive damages, in an amount to be determined at trial, because Equifax should be punished for its egregious misconduct and to deter Equifax and others in their position from acting the same way in the future.

**COUNT IX**
**UNJUST ENRICHMENT**

179.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

180.   Plaintiffs bring this Count against Equifax on behalf of members of the Nationwide Consumer Class. In the alternative, this Claim is asserted on behalf of the New Jersey Class and the New York Class.

181.   As a result of their wrongful and fraudulent acts, concealments, and omissions pertaining to the defective state of their data security protections, as set forth above, Equifax

charged a higher price for their credit monitoring and identity theft protection services than the services' true value. Equifax was also able to sell services to customers that they would have otherwise been unable to sell if customers knew their PII would not be securely stored.

182.    Equifax enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs and other Class members, who paid a premium price that did not reflect the true value of the services offered. It would be inequitable, unjust, and unconscionable for Equifax to retain those wrongfully obtained funds.

183.    Plaintiffs and other Class members have no adequate remedy at law.

184.    Plaintiffs and other Class members therefore seek disgorgement of all profits, plus interest.

## VIII.   PRAYER FOR RELIEF

185.    Plaintiffs, on behalf of themselves and all others similarly situated, request the Court to enter judgment against Defendants, as follows:

    1.    An order certifying the proposed Classes, designating Plaintiffs as the named representatives of the Classes, designating the undersigned as Class Counsel, and making such further orders for the protection of Class members as the Court deems appropriate, under Fed. R. Civ. P. 23;

    2.    An Order enjoining Equifax from engaging in the wrongful conduct alleged herein concerning disclosure and inadequate protection of Plaintiffs' and Classes' PII;

    3.    An Order compelling Equifax to employ and maintain appropriate systems and policies to protect consumer PII and to promptly detect, and timely and accurately report, any unauthorized access to that data;

4.      A declaration that Defendants are financially responsible for notifying all Class members about the data breach;

5.      An award to Plaintiffs and Class members of compensatory, exemplary, and punitive remedies and damages and statutory penalties, including interest, in an amount to be proven at trial;

6.      An award to Plaintiffs and Class members for the return of the purchase price of Equifax services, with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the same, and for damages and reasonable attorneys' fees;

7.      An award to Plaintiffs and Class members for the additional expenses they incur to further secure their PII;

8.      An award of attorneys' fees and costs, as allowed by law;

9.      An award of prejudgment and post judgment interest, as provided by law;

10.     Leave to amend the Complaint to conform to the evidence produced at trial; and

11.     Such other relief as may be appropriate under the circumstances.

## IX.    DEMAND FOR JURY TRIAL

186.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand

a jury trial as to all issues triable by a jury.

Respectfully submitted,

STONE & MAGNANINI LLP


By: ____s/ David S. Stone____
        David S. Stone
        Robert A. Magnanini
        Jason S. Kanterman

100 Connell Drive, Suite 2200
Berkeley Heights, NJ 07922
Tel:    (973) 218-1111
Fax:    (908) 464-3010
dstone@stonemagnalaw.com
rmagnanini@stonemagnalaw.com
jkanterman@stonemagnalaw.com

*Attorneys for Plaintiffs*